# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 91-KA-00626-SCT

*CHRISTOPHER HERSHELL SKAGGS, A/K/A CHRISTOPHER HERSHEL SKAGGS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/5/91 |
| TRIAL JUDGE: | HON. JERRY OWEN TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | RICHARD W. HAMILTON |
| | ROBERT A. PRITCHARD |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  KENNETH C. O'NEAL |
| DISTRICT ATTORNEY: | NA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 6/13/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/8/96 |

**BEFORE DAN M. LEE, C.J., BANKS AND ROBERTS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## I.

## INTRODUCTION

¶1. Christopher Skaggs was convicted in the Harrison County Circuit Court of forcibly raping a seventy-six year old woman, Mrs. W,[1] and sentenced to thirty years imprisonment. Skaggs appeals, asserting that he was denied his statutory and constitutional rights to a speedy trial, and that the trial court committed reversible error in excluding certain testimony. We find no violation of Skaggs' rights to a speedy trial. However, finding that the trial court erred in excluding the testimony of Denise Skaggs, we reverse and remand for a new trial.

## II.

## FACTS AND PROCEDURAL HISTORY

¶2. Mrs. W testified at trial that Skaggs, a friend of her stepson, came to her home the night of November

28, 1989, and asked to borrow some money. When Mrs. W said she did not have any money to lend, Skaggs grabbed her, threw her down on the couch, and raped her. After Skaggs left, Mrs. W went to the Gulfport Memorial Hospital with law enforcement officers. An examination of Mrs. W revealed bruises on the upper arms and physical evidence consistent with recent sexual intercourse. Skaggs testified that he had gone to Mrs. W's home that evening and talked to her for thirty minutes before leaving. He denied raping her. The jury convicted Skaggs of rape, but failed to agree on the penalty. The judge sentenced Skaggs to thirty years imprisonment.

¶3. While the facts of this case appear to be egregious, and the offense charged is most serious, the record reveals that the prosecutrix was, apparently, less than enthusiastic about pursuing criminal charges. Suffice it to say that her lack of enthusiasm may be attributed to personal reasons. Even so, the Court is loathe to reverse such a serious charge. Nevertheless, we have no option, due to the discovery violation described hereinafter.

## III.

## CHRONOLOGY

¶4. The chronology of Skaggs' prosecution follows:

CONSTITUTIONAL STATUTORY EVENT DATE NO. OF DAYS NO. OF DAYS

Arrest 12/05/89 0 0

Day after arrest 12/06/89 1 0

Indictment 05/10/90 166 0

Arraignment 07/03/90 220 0

Day after 07/04/90 221 1

Arraignment

First trial date 12/03/90 374 153

Order of continuance entered by judge 12/12/90 383 162

Beginning day of next term of court 01/07/91 408 187

Second trial date 02/04/91 436 215

Third trial date 06/03/91 554 335

¶5. On July 3, 1990, the day Skaggs entered his not guilty plea, an order was entered setting trial for December 3, 1990. The next document in the record is a motion for production, inspection, and suppression by Skaggs, entered either November 30 or December 3, 1990.[2] This motion included an assertion of the constitutional right to a speedy trial. The record is silent as to what transpired on December 3, 1990, or during the nine days until December 12, 1990, when a continuance was granted on the court's own motion, with the explanation, "Assigned Judge engaged in trial." The section of the form reserved for

resetting trial was left blank.

¶6. The docket does not reflect a resetting for trial or other action during the next term of court, which began on January 7, 1991, or until May 28, 1991, when Skaggs filed a motion to dismiss on constitutional speedy trial grounds. On June 3, 1991, the judge heard pre-trial argument on this motion. Skaggs' lawyer stated that he and Skaggs had been present in court on December 3, 1990; that both sides had subpoenaed witnesses, and that the case was not heard.[(3)] He stated that he had not been informed of the December 12, 1990 continuance.

¶7. Skaggs' lawyer stated that he had been in Biloxi for another case early in the day on February 4, 1991, when he informed the prosecuting attorney in Skaggs' case that he would be delayed. She encouraged him to seek a continuance. He did not, and returned to court in Gulfport later that day, although Skaggs' case was not heard. The prosecutor agreed that she had suggested to Skaggs' attorney that he request a continuance. She asserted that the court had been occupied with other cases on that day, and that inadvertently, no order was entered on continuing Skaggs' case. She also stated that she had not subpoenaed witnesses for February 4, 1991, because "the docket was quite lengthy."

¶8. An employee of the court administrator testified that Skaggs' case had been approximately number 36 on the docket for February 4, 1991.

¶9. The motion was overruled and Skaggs was tried on June 3-5, 1991.

### IV.

### CONSTITUTIONAL RIGHT TO SPEEDY TRIAL

¶10. A defendant's right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, as well as Article 3, Section 26 of the Mississippi Constitution of 1890. An alleged violation of the constitutional right to a speedy trial is examined under the four-factor analysis of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *Wagner v. State*, 624 So.2d 60 (Miss. 1993); *Adams v. State*, 583 So.2d 165 (Miss. 1991); *Craig v. State*, 284 So.2d 57 (Miss. 1973) (first application of *Barker*). The four *Barker* factors are: 1) length of delay; 2) reason for delay; 3) defendant's assertion of the right to a speedy trial, and 4) prejudice to the defendant by the delay. No single factor is dispositive. *Barker; Wiley v. State*, 582 So.2d 1008 (Miss. 1991). The weight given each necessarily turns on the facts and circumstances of each case, the quality of evidence available on each factor, and, in the absence of evidence, identification of the party with the risk of nonpersuasion. *Stogner v. State*, 627 So.2d 815 (Miss.1993); *Jaco v. State*, 574 So.2d 625, 630 (Miss. 1990).

#### 1. Length of Delay

¶11. The constitutional right to a speedy trial attaches at the time a person is effectively accused of a crime. *Noe v. State*, 616 So.2d 298, 300 (Miss. 1993); *Barker,* 407 U.S. 514. In this case, Skaggs' right attached at his arrest. Presumptive prejudice, triggering inquiry into the remaining *Barker* factors, arises where there has been a delay of eight months or more before trial. *Jenkins v. State*, 607 So.2d 1137, 1139 (Miss. 1992)*; Flores v. State*, 574 So.2d at 1322 (Miss. 1990); *Handley v. State*, 574 So.2d at 676 (Miss. 1990). Five hundred fifty-four (554) days elapsed between Skaggs' arrest and trial, prompting further inquiry.

## 2. Reason for Delay

¶12. The state bears the burden of providing the defendant with a speedy trial. Therefore, delays not attributable to the defendant will count against the state, unless the state can show good cause for the delay. *Polk v. State*, 612 So.2d 381, 386 (Miss. 1992); *Adams v. State*, 583 So.2d at 168 (Miss. 1991); *Wiley v. State*, 582 So.2d 1008, 1012 (Miss. 1991); *Smith v. State*, 550 So.2d at 409 (Miss. 1989); *Bailey v. State,* 463 So.2d 1059, 1062 (Miss. 1985); *Perry v. State*, 419 So.2d 194, 199 (Miss. 1982).

¶13. The state argues that the congested docket of Harrison County constituted good cause for the continuance entered December 12, 1990, and for the subsequent delay in bringing Skaggs to trial. Delays due to a crowded docket do not weigh as heavily against the State as deliberate or purposeful delays. *Strunk v. United States*, 412 U.S. 434, 93 S.Ct.2260, 37 L.Ed.56 (1973); *Barker v. Wingo,* 407 U.S. at 531; *Jenkins v. State*, 607 So.2d 1137, 1138 (Miss. 1992); *Ross v. State*, 605 So.2d 17, 22 (Miss. 1992); *Bailey v. State*, 463 So.2d 1059 (Miss. 1985); *Perry v. State* 419 So.2d 194, 199 (Miss. 1982).

¶14. Skaggs' case was reset for trial on February 4, 1991. However, as the court employee testified, Skaggs' case was approximately number thirty-six on the docket for that date. Moreover, Skaggs' counsel was not present in the courtroom that morning.

¶15. The delay in bringing Skaggs to trial must be counted against the State. Nevertheless, to the extent that we have held a crowded docket to constitute good cause for delay, we find that circumstances were such in this case that the delay should not be counted heavily against the state.

## 3. Defendant's Assertion of Right

¶16. Skaggs asserted his right to a speedy trial by motion before his first trial date, December 3, 1990, and again on May 28, 1991. He was tried on June 3, 1991.

## 4. Prejudice

¶17. Delay may prejudice the defendant in two ways. First, the delay may actually impair the accused's ability to defend himself. *Jackson v. State*, 614 So.2d 965, 969 (Miss. 1993); *Polk v. State*, 612 So.2d 381, 387 (Miss. 1992); *Jaco v. State*, 574 So.2d 625, 632-633 (Miss. 1990). We recognize "the possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost ..." *U.S. v. Marion*, 404 U.S. 307, 325 (1971). Additionally, as stated by the United States Supreme Court addressing the constituional right to a speedy trial in the unusual case of a eight and a half year delay between the indictment and arrest of a defendant, *Doggett v. United States*, 505 U.S. 647, 655-6, (1992), "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumtive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, see [*United States v*.] *Loud Hawk*, [474 U.S. 302] at 315, 106 S.Ct. [648], at 656, [88 L.Ed.2d 640 (1986)] it is part of the mix of relevant facts, and its importance increases with the length of delay."

¶18. Second, the defendant may suffer because of the restraints to his liberty. *See Moore v. Arizona*, 414 U.S. 25, 26-27 (1973); *Adams v. State*, 583 So.2d at 170; *Flores v. State*, 574 So.2d at 1323; *Trotter v. State*, 554 So.2d at 318.

¶19. Skaggs has made no showing that the pre-trial delay in any way impaired his ability to defend himself. We find neither inaccessible witnesses nor lost evidence. Moreover, Skaggs was not incarcerated pending trial. While Skaggs complains that the expense and anxiety of preparing for trial three times caused prejudice to him, his assertions are both unsubstantiated and insubstantial. In sum, Skaggs has made no showing of prejudice to himself or his defense.

¶20. Weighing the *Barker* factors together, we find no constitutional violation in Skaggs' prosecution. As there was good cause for the delay in bringing Skaggs to trial, and as Skaggs was not prejudiced by the delay, this assignment of error is without merit.

## V.

## STATUTORY SPEEDY TRIAL: THE 270 DAY RULE

¶21. Miss. Code Ann. §99-17-1 (Supp. 1992) provides:

> Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.

¶22. Skaggs was tried 335 days after arraignment. Where the accused is not tried within 270 days of arraignment, the State bears the burden of establishing good cause for the delay. *Polk v. State,* 612 So.2d 381, 387 (Miss. 1992); *Vickery v. State*, 535 So.2d 1371, 1375 (Miss. 1988); *Williamson v. State*, 512 So.2d 868, 877 (Miss. 1987).

¶23. The State argues that the continuance order was a finding of "good cause" covering the 63-day delay between the date of the first trial setting until the second trial setting. The continuance of Skaggs' case was on the trial court's own motion, with the reason for the continuance noted as "Assigned Judge in Trial." Subtracting those 63 days, the delay from arraignment to trial is reduced to 272 days. Using such computation, day 269 after Skaggs' arraignment fell on Friday, May 31, 1991. Under M.R.C.P. 6(a), the state argues, neither Saturday nor Sunday should be counted in the computation of time. Therefore, day 270 fell on Monday, June 3, 1991, which was in fact the day of Skaggs' trial, and no statutory violation occurred.

## VI.

## DISCOVERY VIOLATION

¶24. Skaggs' former wife Denise was called by the defense as a witness. Skaggs' counsel had informed the state prior to trial that Denise would testify that Mrs. W had told her that she would not have pressed charges against Skaggs had he "kissed her and got her ready." However, when Denise took the stand, her testimony was somewhat different:

> Q. And you went to speak with her. What did y'all talk about?

> A. This incident. She told me this did not happen and that she would drop the charges if I would give her $200.00 to pay for it.

Upon the state's objection, the jury was removed. The state argued that it had not been informed that

Denise would so testify, and requested that this testimony be stricken. Asked by the court if he had known what Denise would say, Skaggs' attorney stated:

> Your Honor, I'll be honest with you; it wasn't until this morning that this about the $200.00, I became aware of it; out in the hall about ten until this morning, judge.

The judge stated that he viewed this "very seriously as a violation of ... discovery." The state declined to move for a mistrial, and was permitted a recess by the court to further interview the witness. After the recess, Skaggs' lawyer volunteered to remove Denise from the stand. The judge permitted Skaggs' attorney to make the following proffer:

> (A)fter Mr. Skaggs' arrest, Mrs. Skaggs at that point in time did return (Mrs. W's) phone call and talk to Mrs. W and go to her house. At that time they spoke about it. At that time Mrs. Skaggs wanted to know why she was pressing charges. Mrs. (W) responded that had he kissed me and got me ready or had he kissed me and got me wet, I would not have pressed these charges; and then after some further conversation, she then told Mrs. Skaggs that this did not happen and that she was willing to drop the charges as long as Mrs. Skaggs would pay the fee at the court, the required fee to drop charges.

> The testimony would then show, I believe, your honor, that Mrs. W and Mrs. Skaggs did in fact drive to Justice Court to drop the charges; that upon reaching there it was determined that Mrs. W would have to speak to Judge Foretich in order to drop the charges, and that at this point in time Mrs. W stated that she would not speak to Judge Foretich due to the fact that Judge Foretich signed lunacy papers against her in the past and she feared that he would lock her up.

The judge instructed the jury to disregard Denise's testimony.

¶25. Skaggs argues that the judge improperly excluded vital evidence concerning Mrs. W's credibility. The state argues that the exclusion was the proper response to the defense's "cynical and deliberate scheme of non-disclosure and ambush."

¶26. In *Houston v. State*, 531 So.2d 598 (Miss. 1988), we discussed the proper procedures for discovery violations under Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice:

> The essence of that procedure is that, where faced with a discovery violation, technical or otherwise, in a criminal proceeding, the Circuit Court should - pre-trial or during trial

> (1) Upon objection by a party, give that party a reasonable opportunity to become familiar with the undisclosed evidence by interviewing the witnesses, inspecting the physical evidence, etc.

> (2) If, after this opportunity for familiarization, the objecting party believes that it may be prejudiced by lack of opportunity to prepare to meet the evidence, it must request a continuance. Failure to do so constitutes an acquiescence that the trial may commence or proceed and that the discovery rule violator may use the evidence as though there had been no discovery violation.

> (3) If the objecting party requests a continuance, the discovery violator may choose to proceed with trial and forego using the undisclosed evidence. If the discovery violator is not willing to proceed without the evidence, the Circuit Court must grant the requested continuance.

*Houston v. State*, 531 So.2d at 611-612. *See also Cole v. State*, 525 So.2d 365, 367-68 (Miss. 1987) ; *Box v. State*, 437 So.2d 19, 23-24 (Miss. 1983) (Robertson, J., specially concurring).

¶27. We cautioned in *Houston* against excluding a defendant's evidence at trial:

> In this context, the radical sanction of exclusion of a substantial portion of the defendant's evidence is one that should rarely be used. Generally, it ought to be reserved for cases in which the defendant participates significantly in some deliberate, cynical scheme to gain a substantial tactical advantage. *See Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798, 814 (1988).

*Houston v. State,* 531 So.2d at 612; *See also Harrison v. State*, 635 So. 2d 894, 898 (Miss. 1994); *Holland v. State*, 587 So. 2d 848, 866-67 (Miss. 1991). In *Taylor v. Illinois*, supra, the United States Supreme Court noted that where a discovery violation is neither willful nor motivated by a desire to obtain a tactical advantage, sanctions less drastic than exclusion of evidence are available:

> Prejudice to the prosecution could be minimized by granting a continuance or a mistrial to provide time for further investigation; moreover, further violations can be deterred by disciplinary sanctions against the defendant or defense counsel.

*Taylor v. Illinois*, 98 L.Ed. at 813.

¶28. In the case at bar, it does not appear that Skaggs "participate(d) significantly in some deliberate, cynical scheme to gain a substantial tactical advantage" (*see Houston, supra*), nor does the defense's conduct appear "willful and motivated by a desire to obtain a tactical advantage." *see Hall v. State*, 546 So.2d 673, 676-77 (Miss. 1989); *Darghty v. State*, 530 So.2d 27 (Miss. 1988); *Taylor*, 98 L.Ed.2d at 814-815).[(4)] Therefore, a sanction less harsh than exclusion of defense testimony - such as a continuance or mistrial - should have been imposed. We cannot say that exclusion of Denise Skaggs' testimony was harmless error; such evidence reflected on the credibility of Skaggs' accusor. Therefore, reversal is warranted.

## VII.

## <u>CONCLUSION</u>

¶29. We find no violation of Skaggs' constitutional or statutory rights to a speedy trial. However, we find that the judge erred in excluding Denise Skaggs' testimony, where less harsh sanctions were available. Skaggs' conviction is reversed and the case is remanded for retrial.

¶30. REVERSED AND REMANDED.

LEE, C.J., PRATHER, P.J., BANKS, SMITH AND MILLS, JJ., CONCUR. SULLIVAN, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, J. PITTMAN, J., NOT PARTICIPATING.

**SULLIVAN, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶31. I concur with the majority opinion to the extent that this case is reversible on the discovery issue. The exclusion of the proffered testimony was without question an unduly harsh sanction and I commend my brother Roberts' opinion saying so. I must, however, respectfully disagree with the majority's conclusion with regard to both the constitutional and statutory speedy trial issues. I write because I believe this case is clearly reversible on those grounds as well.

¶32. First I will address the constitutional speedy trial issue. The majority and the state both concede that the delay in this case is presumptively prejudicial. It is also uncontested by the majority that the alleged reason for the delay in this case, docket congestion, weighs against the state, although not as heavily as deliberate delays. To the extent the majority expresses the contradictory view that the generic order of continuance entered by the trial court in this case constitutes good cause (majority opinion at page 7), I must emphatically disagree.

¶33. If docket congestion was the problem in this case, and if it constituted good cause, which we have never held in the constitutional speedy trial context, the delay would not weigh against the state at all. *Rhymes v. State*, 638 So. 2d 1270, 1273-74 (Miss. 1994); *Perry v. State*, 637 So. 2d 871, 875 (Miss. 1994); *Polk v. State*, 612 So. 2d 381, 386 (Miss. 1992).

¶34. The fact is, the backlog of cases, if that indeed is what occurred in this case, was not the defendant's fault. Therefore, no good cause in the sense of neutralizing this factor in the analysis has been shown and the reason for the delay weighs against the state. Although, as noted above, the majority admits that much at one point in the opinion, the inconsistent statement by the majority opinion that good cause was shown in this case is simply wrong. (Majority opinion at page 8).

¶35. Further, Skaggs asserted his right to a speedy trial on two different occasions, December 3, 1990, and May 28, 1991. While the majority points out what it cannot avoid, that Skaggs asserted his right to a speedy trial, what is not mentioned is that Skaggs' assertion amounts to strong evidentiary weight that his right was violated. *Barker*, 407 U.S. at 531-32.

¶36. Finally, it has become obvious that this Court is not interested in weighing anything. Even in light of presumptive prejudice, which places the risk of nonpersuasion on the state, and the fact that the first three factors clearly weigh in Skaggs' favor, this Court finds no violation because of Skaggs' failure to show prejudice. This Court has consistently applied the prejudice litmus test in recent cases where the defendant claims a constitutional speedy trial violation, improperly requiring the defendant to explain how the state's failure to meet the constitutional mandate has adversely affected him, a course which I have steadfastly rejected and must reject today as being unconstitutional.[5]

¶37. The majority fails to fully address the statutory speedy trial claim made by the defendant in this case. Citing no case law, the majority concludes that 63 days of the delay from the time of Skaggs' arraignment should be subtracted from the analysis because of an order of continuance entered on the trial court's own motion.

¶38. However, we stated the following in *Vickery v. State*, 535 So. 2d 1371, 1375 (Miss. 1988):

> We cannot, in good conscience, allow the spirit of Miss. Code Ann. § 99-17-1 (Supp. 1981) to be violated by accepting the eight (8) orders, in their bland and generic form, as showing good cause and thereby tolling the 270 day period. **To allow a trial court to circumvent the statute in this manner and to this extent would be tantamount to abolishing the statute.**

(Emphasis added). The order of continuance by the court in this case is the same type of generic good cause order we so strongly disapproved of in *Vickery*. The form order of continuance explains little as there is merely a check mark across from the words "Assigned Judge engaged in trial," with no other explanation of the need for a continuance. I would hold this to be an inappropriate circumvention of the unambiguous statute.

¶39. I concur with the majority that the discovery issue requires that we reverse and remand for a new trial. I must respectfully dissent because of my firm belief that Skaggs' constitutional and statutory speedy trial rights were violated. This case should be reversed and rendered on those grounds and the defendant should be discharged.

**McRAE, J., JOINS THIS OPINION.**

1. The name of the victim has been changed to protect her identity.

2. The stamped date of November 30 has been written over with the date December 3, 1990.

3. The record does not indicate that subpoenas were issued.

4. In *Hall v. State*, we noted that "*Darghty* states that *Taylor* limits the exclusion sanction to cases where the defendant's discovery violation was 'willful and motivated by a desire to obtain a tactical advantage.'" *Hall*, 546 So.2d at 677.

5. *Giles v. State*, 650 So. 2d 846 (Miss. 1995) ("unconscionable" negligence on part of district attorney held to be good cause--Court not persuaded missing witness equals particularized prejudice) (See, Sullivan, J., dissenting); *Rhymes*, 638 So. 2d at 1275 (Miss. 1994) ("Rhymes made no showing of anxiety or oppressive incarceration . . . Rhymes has simply failed to produce evidence of oppressive incarceration or anxiety due to the pendency of this charge"--no violation found where delay was presumptively prejudicial, although not "protracted," without showing of actual prejudice by defendant) (See, Sullivan, J., joined by McRae, J., dissenting at 1277-78); *Perry*, 637 So. 2d at 876 (Miss. 1994) (failure by defendant to show particularized prejudice defeats speedy trial claim) (See Sullivan, J., dissenting at 880); *See also, Adams*, 583 So. 2d at 170 (no violation found -- only prejudice found by Court was presumptive prejudice) (See, Robertson, J., joined by Sullivan, J., dissenting at 173).